JUDGE FAILLA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

13 CIV 4744

| | |
|---|---|
| STANLEY H. EPSTEIN, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>JPMORGAN CHASE & CO. and CHASE BANK USA, N.A.,<br><br>　　　　　　　　Defendants. | Civil Action No. _____<br><br>CLASS ACTION COMPLAINT |



Plaintiff Stanley H. Epstein ("Plaintiff Epstein"), by his attorneys, makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to him, which are based on personal knowledge:

**NATURE OF ACTION**

1. This is a class action lawsuit against JPMorgan Chase & Co. ("JPMC"), and Chase Bank USA, N.A. ("CBUSA") (collectively, "Chase" or "Defendants") for charging their credit card account holders "interest" on their own positive credit balances, in breach of Chase's Cardmember Agreement.

2. Chase's Cardmember Agreement governs the relationship between Chase and their credit card account holders. The Cardmember Agreement contains a paragraph about Credit Balances which reads, "You may request a refund of any credit balance at any time. Otherwise, we will apply it to any new charges on your Account or provide the refund to you as required by law." Nothing in the Cardmember Agreement discloses the existence of any fees or charges to the account holder relating to a positive credit balance.

3. On July 30, 2012, Plaintiff Epstein overpaid his Chase Marriott Rewards credit card bill by $0.67, thereby creating a positive credit balance. The credit balance remained on

Plaintiff Epstein's account until January 7, 2013, when Chase charged a $0.67 "interest" charge associated with the positive credit balance on Plaintiff Epstein's account.

4. Chase breached the Credit Balances provision of their Cardmember Agreement by simply taking the credit balance on Plaintiff Epstein's credit card account. Chase had no right to take Epstein's money.

5. As of December 31, 2011, Chase had over 65 million credit card account holders, and it has assessed credit balance "interest" charges to millions of their credit card customers.

6. Plaintiff Epstein asserts claims on behalf of himself, a nationwide class of millions of Chase credit card account holders, and a subclass of Chase credit card account holders in California for breach of contract, breach of the implied covenant of good faith and fair dealing, conversion, unjust enrichment, violation of the Delaware Consumer Fraud Act, negligent misrepresentation, and fraud, and as to the Subclass only, violation of the California Consumers Legal Remedies Act ("CLRA").

## THE PARTIES

7. Plaintiff Stanley H. Epstein is a citizen of California who resides in Santa Monica, California.

8. Defendant JPMorgan Chase & Co. ("JPMC") is a Bank Holding Company with its principal place of business at 270 Park Avenue, New York, New York 10017. JPMC is the nation's largest Bank Holding Company, with over $2.38 trillion in assets as of March 31, 2013.

9. Defendant Chase Bank USA, N.A. ("CBUSA") is a federally chartered bank with its principal place of business at 200 White Clay Center Drive, Newark, Delaware 19711. Chase Bank USA is a subsidiary of JPMC with FDIC-insured deposits that specializes in credit card services.

10. At all relevant times, JPMC and CBUSA acted in concert with each other, with the knowledge and approval of and/or as the agent of each other, and within the course and scope of the agency, regarding the acts and omissions alleged.

11. At all relevant times, JPMC exercised such dominion and control over its subsidiary CBUSA that it is liable for the acts of that subsidiary under the facts alleged herein.

12. Moreover, at all relevant times hereto, Defendants affirmatively participated in substantial aspects of Chase's credit card business. Among other things, JPMC and CBUSA are each responsible for: (1) formulating and implementing the terms of the Cardmember Agreement, including creating, implementing and training employees about policies regarding credit card account holder credit balances, and making charges and adjustments to same; (2) responding to issues and disputes relating to Chase credit card accounts communicated by Chase credit card account holders; and (3) advertising and promoting Chase credit card services.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees and costs, and at least one class member, including Plaintiff Epstein, is a citizen of a state different from Defendants.

14. Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because JPMC has its principal place of business in this district, Defendants do business throughout this district, a substantial part of the events giving rise to Plaintiff Epstein's claims took place within this judicial district, and witnesses and documents are likely to be found in this district.

## FACTS

**Chase's Cardmember Agreement**

15. Chase's Cardmember Agreement governs the relationship between it and its credit card account holders. The Cardmember Agreement is a standardized agreement that is drafted by Chase and presented to credit card account holders on a "take it or leave it" basis.

16. The Cardmember Agreement contains a paragraph about Credit Balances which reads, "You may request a refund of any credit balance at any time. Otherwise, we will apply it to any new charges on your Account or provide the refund to you as required by law." The

Credit Balances clause does not disclose the existence of any fees or charges to the account holder relating to a positive credit balance.

17. The Agreement also contains a section about Periodic Interest Charges and a section that lists Other Fees and Charges that could be assessed to the account holder, but neither of these sections discloses the existence of credit balance "interest" charges or any other fees or charges relating to a positive credit balance.

18. In fact, nothing in the Cardmember Agreement alerts account holders about the existence of credit balance "interest" charges or how and when those charges are assessed to account holders.

**Facts Concerning The Class Representative**

19. Plaintiff Epstein is a Chase Marriot Rewards credit card account holder who first opened his account in May 2009. Each year, Plaintiff Epstein has been charged an Annual Fee for the benefits and services provided pursuant to his Chase Marriott Rewards credit card account. For example, Chase Marriott Rewards accounts allow card holders like Plaintiff Epstein to earn rewards points for every purchase they make and use these rewards points to stay at Marriot brand hotels. The accounts further allow card holders to dispute unauthorized charges. These benefits and services are administered by Defendants.

20. On July 30, 2012, Plaintiff Epstein paid $48.00 to settle a monthly balance of $47.33. This payment resulted in a credit balance of $0.67 on his account.

21. Plaintiff Epstein's monthly account statement reflected the credit balance and contained an "Account Message" which read, "You have a credit balance so no payment is required. You may make charges against the credit or request a refund by contacting Cardmember Services at the address above. If after 6 months the credit balance is $1.00 or more, we will refund the credit within 30 days." The monthly account statement was otherwise silent about Chase's treatment of credit balances.

22. Plaintiff Epstein did not use his Chase Marriott Rewards credit card for the next five months, and the credit balance remained on his account.

23. On January 7, 2013, however, Chase assessed an "interest" charge for $0.67 against the credit balance on Plaintiff Epstein's credit card account. Specifically, Chase's monthly account statement listed the charge as "Purchase Interest Chrg Debit ADJ."

24. Plaintiff Epstein had not requested a refund of his credit balance prior to being charged for the "interest" charge, and because the balance was under $1.00, Chase was under no legal obligation to refund the money. Therefore, pursuant to the terms of the Cardmember Agreement, Chase was obligated to maintain the credit balance on the account and either apply the funds to new charges, or refund it to Plaintiff Epstein if he later requested.

25. Chase breached their Cardmember Agreement by taking Plaintiff Epstein's credit balance money under the guise of a purchase "interest" charge debit adjustment.

26. Aside from the terms of the Cardmember Agreement, the nature of this transaction is at odds with the commonly-understood concept of interest. "Interest" is defined as "a charge for borrowed money generally a percentage of the amount borrowed." Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/interest (last visited July 2, 2013). Here, however, after the credit balance was created, Plaintiff Epstein did not borrow any money from Chase, and he had fully repaid all money previously borrowed. Instead, Chase turned the traditional notion of interest on its head by charging Plaintiff Epstein "interest" on his own money.

27. On May 1, 2013, Chase charged Plaintiff Epstein's credit card account an Annual Renewal Fee of $45.00. Since Chase had already taken Plaintiff Epstein's credit balance, the $0.67 balance was not applied to this new account charge as required pursuant to the terms of the Cardmember Agreement.

28. Further, Chase has enriched themselves by taking the credit balance on Plaintiff Epstein's credit card account, including by earning interest for themselves on Plaintiff Epstein's converted funds.

29. Plaintiff Epstein would not have created or maintained a positive credit balance on his credit card account had he known Chase would unilaterally take his positive credit balance under the guise of a so-called "interest" charge.

## CLASS REPRESENTATION ALLEGATIONS

30. Plaintiff Epstein seeks to represent a class defined as all Chase credit card account holders in the United States who were charged monies associated with a positive credit balance on their Chase credit card account (the "Class").

31. Plaintiff Epstein also seeks to represent a subclass of all Class members who were charged monies associated with a positive credit balance on their Chase credit card account residing in California (the "Subclass").

32. Members of the Class and Subclass are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class and Subclass number in the millions. The precise number of Class and Subclass members and their identities are unknown to Plaintiff Epstein at this time but may be determined through discovery. Class and Subclass members may be notified of the pendency of this action by mail, publication, and/or through the customer records of Defendants.

33. Common questions of law and fact exist as to all Class and Subclass members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to: (a) whether Chase breached the Cardmember Agreement by charging credit card account holders monies associated with positive credit balances on their Chase credit card accounts; (b) whether Chase's marketing and promotion of their credit card services is false and misleading with respect to the treatment of credit balances; (c) whether Chase unjustly enriched themselves by illegally taking their credit card account holders' positive credit balances; (d) whether Chase intentionally misled their credit card account holders concerning the treatment of positive credit balances; (e) whether and to what extent Chase's practices concerning the treatment of their customers' positive credit card balances have damaged the Class members.

34. The claims of the named Plaintiff are typical of the claims of the Class and Subclass in that the named Plaintiff had a credit balance and was unilaterally charged an amount equal to that outstanding credit balance under the guise of an "interest" charge, without his authorization.

35. Plaintiff Epstein is an adequate representative of the Class and Subclass because his interests do not conflict with the interests of the Class or Subclass members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously. The interests of Class and Subclass members will be fairly and adequately protected by Plaintiff Epstein and his counsel.

36. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class and Subclass members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I

### Breach Of Contract

37. Plaintiff Epstein hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

38. Plaintiff Epstein brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendants.

39. Plaintiff Epstein and the Class and Subclass members entered into a legally binding contract with Chase when they opened their credit card accounts, which are governed by the Cardmember Agreement.

40. The Cardmember Agreement's provision on Credit Balances states, "You may request a refund of any credit balance at any time. Otherwise, we will apply it to any new charge on your Account or provide the refund to you as required by law."

41. Plaintiff Epstein did not request a refund of his credit balance, and the outstanding credit balance was not applied towards any new charges on his account. Instead, Chase debited the positive credit balance from his account under the guise of an "interest" charge.

42. Defendants materially breached the Cardmember Agreement by charging Plaintiff Epstein's and the Class and Subclass members' accounts for "interest" charges in the amount equal to their positive credit balances without their authorization. These account holders did not owe Chase interest.

43. Plaintiff Epstein and the Class and Subclass members have performed all of their duties and obligations under the Cardmember Agreement, except those excused by Chase's non-performance.

44. As a direct and proximate cause of Chase's breach of contract, Plaintiff Epstein and the Class and Subclass members have and will continue to suffer damages.

## COUNT II

### Breach Of The Implied Covenant Of Good Faith And Fair Dealing

45. Plaintiff Epstein hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

46. Plaintiff Epstein brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendants.

47. The contract between Defendants and Plaintiff Epstein imposed on each party a duty of good faith and fair dealing in the performance of the Cardmember Agreement pursuant to its terms.

48. Defendants breached their duty of good faith and fair dealing by intentionally, purposefully, and/or negligently charging Plaintiff Epstein and the Class and Subclass members unauthorized "interest" charges in the amount of their positive credit balance.

49. Defendants' conduct was conscious, deliberate, and unfairly frustrated the agreed purpose in carrying out the Cardmember Agreement.

50. Defendants' conduct disappointed the reasonable expectations of Plaintiff Epstein (who would not have maintained a positive credit balance on his account had he known of Chase would unilaterally take his positive credit balance under the guise of a so-called "interest" charge) and the Class and Subclass members, thereby depriving them of the benefits of their bargain.

51. As a direct and proximate result of Defendants' breach of good faith and fair dealing, Plaintiff Epstein and the Class and Subclass members have and will continue to suffer damages.

## COUNT III

### Conversion

52. Plaintiff Epstein hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

53. Plaintiff Epstein brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendants.

54. Defendants have and continue to have a duty to maintain and preserve customers' credit card accounts, and to prevent their diminishment or alteration through their own wrongful acts.

55. Defendants wrongfully and intentionally collected "interest" charges associated with their credit card account holders' positive credit balances.

56. Defendants collected these charges by wrongfully and intentionally charging Plaintiff Epstein and members of the Class and Subclass "interest" charges equal in value to their

outstanding credit balances. This so-called "interest" was therefore paid by Plaintiff Epstein and members of the Class and Subclass on their *own money*.

57. Defendants have assumed and exercised the right of ownership over these funds without authorization to do so and in hostility to the rights of Plaintiff Epstein and members of the Class and Subclass without legal justification.

58. Defendants have retained these funds unlawfully without the consent of Plaintiff Epstein and members of the Class and Subclass and have deprived them from exercising control over these funds.

59. Defendants intend to permanently deprive Plaintiff Epstein and members of the Class and Subclass of these funds.

60. Plaintiff Epstein and members of the Class and Subclass properly own these funds, not Defendants, who now claim that they are entitled to ownership of the funds contrary to the rights of Plaintiff Epstein and members of the Class and Subclass.

61. Plaintiff Epstein and members of the Class and Subclass are entitled to the immediate possession of these funds.

62. Defendants have wrongfully converted these specific and readily identifiable funds.

63. Defendants' wrongful conduct is of a continuing nature.

64. As a direct and proximate result of Defendants' wrongful conversion, Plaintiff Epstein and members of the Class and Subclass have suffered and continue to suffer damages. They are entitled to recover from Defendants all damages and costs permitted, including all amounts that Defendants wrongfully converted, which are specific and readily identifiable.

## COUNT IV

### Unjust Enrichment

65. Plaintiff Epstein hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

66. Plaintiff Epstein brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendants.

67. Plaintiff Epstein and Class and Subclass members conferred benefits on Defendants by paying Defendants' unauthorized "interest" charges associated with their positive credit balances.

68. Defendants have been unjustly enriched in retaining the revenues derived from the unauthorized "interest" charges and/or by earning interest on the monies generated from the unauthorized "interest" charges. Retention of those monies and interest under these circumstances is unjust and inequitable because Chase breached their contractual promise that, "You may request a refund of any credit balance at any time. Otherwise we will apply it to any new charge on your Account or provide the refund to you as required by law." Defendants breached their contractual promise without justification.

69. Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiff Epstein and the Class and Subclass members is unjust and inequitable, Defendants must pay restitution to Plaintiff Epstein and the Class and Subclass members for their unjust enrichment, as ordered by the Court.

## COUNT V

### Violation Of The Delaware Consumer Fraud Act ("DCFA"),

### 6 Delaware Code §§ 2513, *et seq.*

70. Plaintiff Epstein hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

71. Plaintiff Epstein brings this claim individually and on behalf of the members of the proposed Class and Subclass against all Defendants.

72. The DCFA prohibits the "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omissions of any material fact with intent that others rely upon such concealment, suppression or

omissions, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby." 6 Del. Code § 2513(a).

73. Defendants are persons within the meaning of 6 Del. Code § 2511(7).

74. Defendants' credit card services are "merchandise" within the meaning of 6 Del. Code § 2511(6).

75. As described herein, Defendants made false representations regarding their treatment of positive credit balances. Specifically, Defendants falsely represented "You may request a refund of any credit balance at any time. Otherwise we will apply it to any new charge on your Account or provide the refund to you as required by law." Defendants intended that others rely on these misrepresentations and omissions in connection with the sale of its credit card services.

76. Defendants' actions as set forth above occurred in the conduct of trade or commerce.

77. Defendants' conduct proximately caused injuries to Plaintiff Epstein and the Class and Subclass.

78. Plaintiff Epstein and the Class and Subclass were injured as a result of Defendants' conduct in that Plaintiff Epstein and the Class and Subclass incurred unauthorized "interest" charges in the amount equal to their positive credit balances.

79. Plaintiff Epstein and the Class and Subclass are entitled to recover damages, as well as punitive damages for Defendants' gross and aggravated misconduct.

80. Elderly or disabled Class and Subclass members are entitled to a civil penalty of $10,000, court costs, attorneys' fees, and treble damages for each violation of the DCFA. 6 Del. Code §§ 2581, 2583.

## COUNT VI

## Violation Of California's Consumers Legal Remedies Act ("CLRA"),

## California Civil Code §§ 1750, *et seq.*

81. Plaintiff Epstein hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

82. Plaintiff Epstein brings this claim individually and on behalf of the members of the proposed Subclass against all Defendants.

83. CLRA § 1770(a)(14) prohibits "[r]epresenting that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law."

84. Defendants violated this provision by knowingly, purposefully and/or negligently charging "interest" charges against their account holders' positive credit despite representing in the Cardmember Agreement that "You may request a refund of any credit balance at any time. Otherwise, we will apply it to any new charge on your Account or provide the refund to you as required by law."

85. On May 29, 2013, a CLRA notice letter was served on Defendants JPMC and CBUSA that complied in all respects with California Civil Code § 1782(a). Plaintiff Epstein, by and through his counsel, sent his letter *via* certified mail, return receipt requested, advising Defendants they were in violation of the CLRA and must correct, repair, replace, or otherwise rectify the services alleged to be in violation of § 1770. A true and correct copy of Plaintiff's letter is attached hereto as Exhibit A.

86. Wherefore, Plaintiff Epstein seeks damages, restitution, and injunctive relief for this violation of the CLRA.

## COUNT VII

## Negligent Misrepresentation

87. Plaintiff Epstein hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

13

88.     Plaintiff Epstein brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendants.

89.     Chase provided Plaintiff Epstein and the Class and Subclass members with false or misleading material information and failed to disclose material facts about their credit card service in the Cardmember Agreement, specifically concerning their policies and practices about the treatment of positive credit balances.

90.     Chase had a pecuniary duty to provide accurate information to their credit card holders based on the existing business relationship.

91.     At an absolute minimum, Defendants failed to exercise reasonable care in communicating truthful and complete information about their policies and practices concerning the treatment of positive credit balances, including but not limited to the existence and method of assessing "interest" charges against positive credit balances despite their representations that, "You may request a refund of any credit balance at any time. Otherwise we will apply it to any new charges on your Account or provide the refund to you as required by law."

92.     The negligent misrepresentations and omissions made by Defendants, upon which Plaintiff Epstein and the Class and Subclass members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff Epstein and the Class and Subclass members to incur unauthorized "interest" charges in the amount equal to their positive credit balances.

93.     The negligent actions of Defendants caused damage to Plaintiff Epstein and the Class and Subclass members, who are entitled to damages and other legal and equitable relief as a result.

## COUNT VIII

### Fraud

94.     Plaintiff Epstein hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

95.     Plaintiff Epstein brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendants.

96. Chase knowingly provided Plaintiff Epstein and the Class and Subclass members with false or misleading material information and failed to disclose material facts about their policies and practices concerning the treatment of positive credit balances, including but not limited to the existence and method of assessing "interest" charges against positive credit balances despite their representations that, "You may request a refund of any credit balance at any time. Otherwise we will apply it to any new charges on your Account or provide the refund to you as required by law."

97. The misrepresentations and omissions made by Defendants, upon which Plaintiff Epstein and the Class and Subclass members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff Epstein and the Class and the Subclass members to incur unauthorized "interest" charges in the amount equal to their positive credit balances.

98. Further, these "interest" charges were charged to Plaintiff Epstein's and the Class and Subclass member's positive credit balances, meaning they were charged interest on their own money.

99. The fraudulent conduct of Defendants caused damage to Plaintiff Epstein and the Class and Subclass members, who are entitled to damages and other legal and equitable relief as a result.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

a. For an order certifying the nationwide Class and the Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff Epstein as representative of the Class and Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and Subclass members;

b. For an order declaring the Defendants' conduct violates the statutes referenced herein;

15

c.     For an order finding in favor of Plaintiff Epstein, the nationwide Class, and the Subclass on all counts asserted herein;

d.     For compensatory, statutory and punitive damages in amounts to be determined by the Court and/or jury;

e.     For prejudgment interest on all amounts awarded;

f.     For an order of restitution and all other forms of equitable monetary relief;

g.     For injunctive relief as pleaded or as the Court may deem proper; and

h.     For an order awarding Plaintiff Epstein and the Class and Subclass their respective reasonable fees, including attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury of all issues so triable.

Dated: July 9, 2013          Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: _____
       Joseph I. Marchese

Scott A. Bursor (SB1141)
Joseph I. Marchese (JM1976)
Neal J. Deckant (ND1984)
Yitzchak Kopel (YK5522)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: scott@bursor.com
        jmarchese@bursor.com
        ndeckant@bursor.com
        ykopel@bursor.com

*Attorneys for Plaintiff*

1  I, Stanley H. Epstein, declare as follows:

2  1. I am the plaintiff in this action and citizen of the State of California. I have personal knowledge of the facts stated herein and, if called as a witness, I could and would testify competently thereto.

3  2. The complaint filed in this action is filed in the proper place for trial under California Civil Code Section 1780(d) in that JPMorgan Chase & Co.'s principal place of business is in this District, and in that both JPMorgan Chase & Co. and Chase Bank USA, N.A. conduct substantial business in this District.

4  3. While living in California, in July 2012, I overpaid my Chase credit card bill in reliance on the fact that Chase would apply the positive balance towards any new charges on my account. It is so provided in the Credit Balances provision of the Cardmember Agreement. I would not have overpaid my credit card bill had I known that Chase would unilaterally take my positive credit balance.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct, executed on July 8, 2013 at Santa Monica, California.

_____
STANLEY H. EPSTEIN

**EXHIBIT A**

# BURSOR & FISHER
P.A.

888 SEVENTH AVENUE
NEW YORK, NY 10019
www.bursor.com

JOSEPH I. MARCHESE
Tel: 646.837.7410
Fax: 212.989.9163
jmarchese@bursor.com

May 29, 2013

*Via Certified Mail – Return Receipt Requested*

JPMorgan Chase & Co.
Attn: Legal Department
270 Park Avenue
New York, NY 10017

Chase Bank USA, N.A.
Attn: Legal Department
200 White Clay Center Drive
Newark, DE 19711

Re:   Demand Letter Pursuant to California Civil Code § 1782

To Whom It May Concern:

This letter serves as a preliminary notice and demand for corrective action by JPMorgan Chase & Co. and Chase Bank USA, N.A. (collectively, "Chase") pursuant to the provisions of California Civil Code § 1782, on behalf of our client, Stanley H. Epstein, and a class of all similarly situated holders of Chase credit cards (the "Class").

On July 30, 2012, Mr. Epstein overpaid his Chase credit card bill by $0.67. Chase subsequently credited the surplus to his account. That surplus remained on Mr. Epstein's account for five months. But then, on January 7, 2013, Chase unilaterally charged Mr. Epstein's account without authorization for $0.67 in violation of its Cardmember Agreement provision on credit balances, which reads: "You may request a refund of any credit balance at any time. Otherwise, we will apply it to any new charges on your Account or provide the refund to you as required by law." Mr. Epstein did not request a refund and the balance was not credited to new charges on his account. Instead, Chase breached the Cardmember Agreement by taking the $0.67 surplus from our client's credit card account.

By systematically taking its credit card account holders' credit balances without their authorization, Chase has breached its Cardmember Agreement and has violated and continues to

violate numerous subsections of the Consumers Legal Remedies Act, Civil Code § 1770, including, but not limited to, subsections (a)(5), (a)(9), (a)(14), and (a)(16).

On behalf of our client and the Class, we hereby demand that Chase immediately: (1) cease and desist from continuing to take excess credit card balances in breach of its Cardmember Agreement; and (2) make full restitution to all holders of Chase credit card accounts that have been charged for their excess account balances without authorization.

We also demand that Chase preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1. All documents concerning excess balance provisions for Chase credit cards;

2. All documents concerning the pricing, advertising, marketing, and/or sale of Chase credit cards;

3. All internal communications regarding refunding of excess credit card account balances of $1.00 or less;

4. All communications with holders of Chase credit card accounts including, but not limited to, complaints or comments concerning the excess balance policy; and

5. All documents concerning the total revenue derived from charging Chase credit card account holders for their excess account balances.

If Chase contends that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents immediately upon receipt of this letter.

This letter also serves as a thirty (30) day notice and demand requirement under § 1782 for damages. Accordingly, should Chase fail to rectify the situation on a class-wide basis within 30 days of receipt of this letter, we will seek damages, plus punitive damages, interest, attorneys' fees, and costs.

Please contact me right away if you wish to discuss an appropriate way to remedy this matter. If I do not hear from you promptly, I will take that as an indication that you are not interested in doing so.

Very truly yours,

*Joseph I. Marchese*

Joseph I. Marchese