# BURSOR & FISHER
P.A.

888 SEVENTH AVENUE
NEW YORK, NY 10019
www.bursor.com

JOSEPH I. MARCHESE
Tel: 646.837.7150
Fax: 212.989.9163
jmarchese@bursor.com

August 13, 2013

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 08/14/2013

*By E-Mail*

The Honorable Katherine Polk Failla
Failla_NYSDChambers@nysd.uscourts.gov

Re:   *Epstein v. JPMorgan Chase & Co., et al.*, No. 13-CV-4744

Dear Judge Failla:

JPMorgan Chase & Co.'s and Chase Bank, USA, N.A.'s (collectively, "Chase") motions to dismiss should be denied for two reasons.[1]  First, courts in the Second, Third, and Ninth Circuits (among others) roundly reject pick-off attempts where, as here, Chase attempted to circumvent Rule 23 by mooting the claims of the named plaintiff with an unsolicited check for 67 cents.  Second, the allegations of Plaintiff Epstein's well-pleaded complaint sufficiently state claims for each of the eight causes of action.

Moreover, Chase requests leave to file *two* separate motions to dismiss in staggered rounds of briefing:  first under Rule 12(b)(1) (challenging Plaintiff's standing) and second under Rule 12(b)(6) (failure to state a claim).  Instead, for the sake of judicial efficiency, Defendants should bring their arguments under Rule 12(b)(1) and 12(b)(6) in a single motion.

## I.   Plaintiff Epstein Has Standing To Litigate This Case

Chase argues that "Plaintiff lacks standing because the 67-cent balance adjustment he challenges was fully refunded to him before he commenced suit." Chase Letter at 2.  That is wrong for three reasons.  First, Chase's 67-cent "refund" was actually an unsolicited and illegal pick-off attempt designed to moot Plaintiff Epstein's class claims.  In fact, Plaintiff Epstein accurately alleges that he "did *not* request a refund of his credit balance." Compl. ¶ 41 (emphasis added).  To be clear, Plaintiff Epstein never requested a refund during any phone call to Chase, nor did he ever cash Chase's unsolicited check. *Id.*  Second, Chase's pick-off attempt does not deprive Plaintiff Epstein of standing because it does not account for injunctive relief, restitution of ill-gotten revenues,[2] treble damages, attorneys' fees, or costs, all of which Plaintiff Epstein seeks in this litigation.  *See id.* ¶¶ 28, 65-69, 80, 86, 93.  Indeed, Chase *continues* to illegally take the positive credit balances in its customers' accounts, in breach of its contract. *Id.*

---

[1] Despite Chase's argument to the contrary, Plaintiff's complaint makes specification allegations regarding the role and participation of JPMorgan Chase & Co. in the alleged illegal conduct. *See* Class Action Complaint ("Compl.") ¶¶ 10-12.

[2] Plaintiff alleges that "Defendants have been unjustly enriched in retaining the revenues derived from the unauthorized 'interest' charges *and/or by earning interest on the monies generated from the unauthorized 'interest' charges.*"  Compl. ¶ 68 (emphasis added).

¶ 63.  Third, under California's Consumers Legal Remedies Act ("CLRA"), a plaintiff must merely show that he suffered "any damage," which is "a [broad standard] that includes any pecuniary damage as well as opportunity costs and transaction costs that result when a consumer is misled by deceptive marketing practices," such as the opportunity cost of putting the funds to another use, or entering into a transaction that he would not have done "but for the misrepresentation." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1108 (9th Cir. 2013) (finding that the named plaintiff had standing to sue under the CLRA where he "purchased several items [on sale] that were advertised as being substantially reduced from their 'original' or 'regular' prices but that were, in reality, routinely sold by Kohl's at the advertised 'sale' prices"). *See* Compl. ¶ 29.

Furthermore, the law of every potentially applicable jurisdiction[3] roundly rejects pick-off attempts. *See, e.g.*, *Chen v. Allstate Ins. Co.*, 2013 WL 2558012, at *6 (N.D. Cal. June 10, 2013) (finding that an unaccepted settlement offer prior to class certification did not moot plaintiff's claims, because the named plaintiff "retains a concrete interest in the outcome of this litigation, on the basis that the Rules of Civil Procedure give the proposed class representative the right to have a class certified"); *Craftwood II, Inc. v. Tomy Int'l*, 2013 WL 3756485, at *1-4 (C.D. Cal. July 15, 2013) (same); *Kagan v. Gibraltar Sav. & Loan Assn.*, 35 Cal. 3d 582, 587 (Cal. 1984) (rejecting pick-off attempt by a retail bank prior to the filing of plaintiff's complaint, finding that the CLRA "does not permit a prospective defendant to 'pick off' prospective class representatives by offering them individual relief not made available to the entire class"); *Weiss v. Regal Collections*, 385 F.3d 337, 348 (3d Cir. 2004) (reversing dismissal of plaintiff's claims as moot where defendants offered the named plaintiff full recovery prior to class certification); *Schaake v. Risk Management Alternatives, Inc.*, 203 F.R.D. 108 (S.D.N.Y. 2001) (holding that plaintiff's claims were not moot after receiving a Rule 68 offer prior to class certification, and finding that such a tactic "would also allow defendants to essentially opt-out of Rule 23"); *Nasca v. GC Services Ltd. Partnership*, 2002 WL 31040647 (S.D.N.Y. 2002) (same).[4]

## II.     Plaintiff Epstein States A Claim For Each Cause Of Action

Chase's contract promises that, "You may request a refund of any credit balance at any time.  Otherwise, we will apply it to any new charge on your Account or provide the refund to you as required by law."  Compl. ¶ 40.  However, Chase summarily contends that it did not "breach its contract with Plaintiff" because it "sent Plaintiff a refund check."  Chase Letter at 3.  That is wrong.  First, Chase ignores Plaintiff's allegation that he "did not request a refund of his credit balance."  Compl. ¶ 41.  Second, Chase did not "apply [his balance] to any new charge."

---

[3] Based on the allegations of the complaint and the Cardmember Agreement, Plaintiff considers the laws of the Second, Third, and Ninth Circuits regarding the legality of pick-off attempts.
[4] Chase's reliance on *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523 (2013) is misplaced for two reasons. First, the *Genesis* decision involved a collective action under the Fair Labor Standards Act ("FLSA"), not a Rule 23 class action.  In fact, the court held that Rule 23 cases were "inapplicable to these facts" because "Rule 23 actions are fundamentally different from collective actions under the FLSA."  *Id.* at 1529.  Second, the *Genesis* court did not reach the issue of whether a Rule 68 offer mooted plaintiff's claims, because plaintiff *conceded* her claims were moot.  *Id.* at 1529 ("[T]he issue is not before us… [R]espondent conceded that [point]… and failed to raise the argument in her brief.").  For these reasons, *Genesis* was deemed inapplicable by *Chen*, *Craftwood II*, and *Ramirez*. Additionally, *County of Los Angeles v. Davis*, 440 U.S. 625, 632 (1979), and *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562-67 (1992), are inapposite because, among other things, Chase's pick-off attempt did not "completely and irrevocably eradicate the effects of the alleged" misconduct, as discussed herein.

Instead, Chase charged Plaintiff Epstein a $45.00 Renewal Fee on May 1, 2013.  *Id.* ¶ 27.  But since Chase "had already taken Plaintiff Epstein's credit balance, the $0.67 balance was not applied to this new charge as required pursuant to the terms of the Cardmember Agreement."  *Id.*

Chase further argues that "Plaintiff's liability theories [lack] merit" because "the Truth in Lending Act ['TILA'] and its implementing regulation mandate refunds only of credit balances in excess of $1."  Chase Letter at 2.  That is irrelevant because Chase contracted with Plaintiff Epstein that "we will apply [a credit balance] to any new charge on your Account or provide the refund to you as required by law."  And, TILA is silent regarding credit balances of $1 or less.

Chase is also incorrect that Plaintiff's claims are "preempted by the National Bank Act" ("NBA").  Chase Letter at 3.  In fact, the NBA only preempts state laws that "conflict with the letter or the general purposes of the NBA."  *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 11 (2007).  Contracts made by banks, however, do not conflict with the NBA and are accordingly "governed and construed by State laws."  *Id.* (citing *First Nat. Bank v. Commonwealth of Kentucky*, 76 U.S. 353, 362 (1869) ("[Banks] are subject to the laws of the State, and ... [a]ll their contracts are governed and construed by State laws."); *see also* 12 C.F.R. §7.4008(e)(1) (listing state law governing "[c]ontracts" as generally "not preempted" by the NBA).[5]

Next, Chase argues that Plaintiff's CLRA and DFCA claims fail because "these statutes do not regulate banking activity, such as credit card lending."  Chase Letter at 3.  But recent cases are clear that while these statutes do not regulate the *issuance* of a credit card, they do regulate their contracts and associated *services*.  *See Jefferson v. Chase Home Finance LLC*, 2007 WL 1302984 (N.D. Cal. May 3, 2007) (finding that financial services are covered under the CLRA, and that *Berry* was not "persuasive" because the court "failed to consider whether… a credit card agreement involves other services in addition to an extension of credit"); *Kagan v. Gibraltar Sav. & Loan Ass'n*, 35 Cal. 3d at 596-97 (applying the CLRA to claims regarding management fees in connection with individual retirement accounts).  *See* Compl. ¶ 19.

Chase then argues that Plaintiff's unjust enrichment, implied covenant, and conversion claims fail because "the parties' relationship is governed by an express contract."  Chase Letter at 3.  But Federal Rule of Civil Procedure 8(d) expressly permits pleading in the alternative, as do the laws of New York, California, and Delaware.  *See, e.g.*, *St. John's Univ., N.Y. v. Bolton*, 757 F. Supp. 2d 144, 183 (E.D.N.Y. 2010) (stating that "[a]t the pleading stage, Plaintiff is not required to guess whether it will be successful on its contract, tort, or quasi-contract claims"); *In re Apple In-App Purchase Litig.*, 855 F. Supp. 2d 1030, 1042 (N.D. Cal. 2012).  Chase further argues that "Delaware law does not recognize a conversion claim in this context," but this argument is premature prior to a choice of law analysis.  Finally, Chase argues that Plaintiff's "negligent misrepresentation and fraud claims are not pleaded in compliance with Rule 9(b)," because Plaintiff did not "specify [any] false representations," nor does he allege knowledge by Chase.  But this is false based on a plain reading of the complaint's allegations.  *See* Compl. ¶¶ 19-29, 84, 96.

---

[5] *Evans v. Chase Bank USA, N.A.*, 267 Fed. Appx. 692, 693 (9th Cir. 2008) is inapposite.  The *Evans* plaintiffs alleged that their bank failed to provide proper notice of certain interest rate increases, but the court found that plaintiffs' claims were preempted because the bank's notices were permitted by TILA and regulations thereunder.  *Id.* at 693.  This is not the case here concerning Plaintiff Epstein's credit balance for less than $1.

\* \* \*

      For the foregoing reasons, the most efficient way to move forward is for the Court to set a schedule for the briefing of a single motion to dismiss under Rule 12(b)(1) and 12(b)(6).

      Very truly yours,

      Joseph I. Marchese

Cc:  Joseph E. Strauss, Stroock & Stroock & Lavan LLP, jstrauss@stroock.com
      Stephen J. Newman, Stroock & Stroock & Lavan LLP, snewman@stroock.com