UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

STANLEY H. EPSTEIN, individually and on
behalf of all others similarly situated,

Plaintiff,

v.

JPMORGAN CHASE & CO. and CHASE BANK,
USA, N.A.,

Defendants.

------------------------------------------------------------X

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: March 21, 2014

13 Civ. 4744 (KPF)

OPINION AND ORDER

KATHERINE POLK FAILLA, District Judge:

On July 9, 2013, Stanley H. Epstein filed this action against JPMorgan

Chase & Co. ("JPMC") and Chase Bank, USA, N.A. ("CBUSA") (collectively,

"Defendants" or "Chase") as a nationwide class action pursuant to Federal Rule

of Civil Procedure 23, on behalf of himself and all other Chase credit card

account holders who were charged monies associated with a positive credit

balance on their accounts.  Defendants have moved to dismiss Plaintiff's

complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject

matter jurisdiction and, in the alternative, under Federal Rule of Civil

Procedure 12(b)(6) for failure to state a claim.  Because this Court finds that

Plaintiff Epstein lacks standing to bring the claims he alleges, either

individually or as a putative class representative, Defendants' Rule 12(b)(1)

motion to dismiss is granted, Defendants' Rule (12)(b)(6) motion to dismiss is

denied as moot, and this case is dismissed.

## BACKGROUND[1]

### A.   The Defendants and the Cardmember Agreement

JPMC is a bank holding company.  (Compl. ¶ 8).  CBUSA, a subsidiary of JPMC, is a federally chartered bank that specializes in credit card services.  (*Id.* at ¶ 9).  One of the services that CBUSA offers to customers is a credit card account that is governed by a standardized cardmember agreement. (Cardmember Agreement at 1).[2]  As relevant to the instant litigation, the Cardmember Agreement provides:

> Minimum Payment: You must make your Minimum Payment in a way that we receive it by the time and date it is due. You may make payments greater than your required Minimum Payment.

---

[1]     The facts contained in this Opinion are drawn from Plaintiff's complaint (Dkt. #1); the CBUSA cardmember agreement provided to Plaintiff (the "Cardmember Agreement" or "Agreement") (Dkt. #20-1); the Declaration of Kristina A. Del Vecchio in Support of Defendants' Motion to Dismiss Plaintiff's Complaint ("Del Vecchio Decl.") (Dkt. #18) and the exhibit thereto; and the Declaration of Stanley H. Epstein in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss ("Epstein Decl.") (Dkt. #23) and the exhibits thereto.  For convenience, Defendants' supporting memorandum is referred to in this Opinion as "Def. Br."; Plaintiff's opposition memorandum is referred to as "Pl. Opp."; and Defendants' reply memorandum is referred to as "Def. Reply."

[2]     In connection with the pending motion, Defendants moved pursuant to Federal Rule of Evidence 201(a) and (c) for the Court to take judicial notice of the Cardmember Agreement and certain federal court decisions.  (Dkt. #20).  Plaintiff has not opposed Defendants' motion, and agrees that for the purposes of resolving Defendants' Rule 12(b)(1) motion, "the court may look to evidence outside the pleadings without converting the motion to a summary judgment motion." (Pl. Opp. 1 n.1).  It is well established that the Court may consider these documents, particularly with respect to Defendants' Rule 12(b)(1) motion.  *See, e.g.*, *Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *Global Network Commc'n, Inc.*, v. *City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("'A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'" (quoting *Int'l Star Class Yacht Racing Ass'n* v. *Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998)); *J.S. ex rel. N.S.* v. *Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) ("We may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but we may not rely on conclusory or hearsay statements contained in the affidavits.").  Accordingly, the Court will do so here.

This will reduce the interest charges that are added to your Account.

Credit Balances: You may request a refund of any credit balance at any time.  Otherwise, we will apply it to any new charges on your Account or provide the refund to you as required by law.

(*Id.* at 2).  As to choice of law, the Agreement provides that:

The terms and enforcement of [the] agreement and [the customer's] account shall be governed and interpreted in accordance with federal law and, to the extent state law applies, the law of Delaware, without regard to conflict-of-law principles.  The law of Delaware, where [CBUSA] and [the customer's] account are located, will apply no matter where [the customer] live[s] or use[s] the account."

(*Id.* at 4).  And with respect to procedure, the Agreement instructs:

You must notify [CBUSA] of any potential errors [on the customer's account statement] <u>in writing</u>.  [The customer] may call [CBUSA], but if [the customer] do[es,] [CBUSA is] not required to investigate any potential errors and [the customer] may have to pay the amount in question.

Within 30 days of receiving [the customer's] letter, [CBUSA] must tell the customer that [it] received [the customer's] letter.  [CBUSA] will also tell [the customer] if [CBUSA has] already corrected the error.  Within 90 days of receiving [the customer's] letter, [CBUSA] must either correct the error or explain to [the customer] why [CBUSA] believe[s] the bill is correct.

(*Id.* (emphasis in original)).  As Plaintiff alleges, the Cardmember Agreement does not disclose the existence of any fees or charges, including credit balance "interest" charges, to the account holder relating to a positive credit card account balance.  (Compl. ¶¶ 16-18).

**B.**     **Plaintiff's Credit Card Account and Account Transaction History with Defendants**

In May 2009, Plaintiff opened a Chase Marriott Rewards credit card account (the "Credit Card Account") with CBUSA that is governed by the Cardmember Agreement. (*See* Compl. ¶¶ 2, 19). Plaintiff's Credit Card Account allows Plaintiff to, among other things, earn "rewards" points for every purchase he makes, and to use those rewards points to stay at Marriott-affiliated hotels. (*Id.* at ¶ 19).

In late May 2012, Plaintiff received an account statement for his Credit Card Account for the period ending May 22, 2012. (Epstein Decl. ¶ 2 and Ex. A). This statement included a charge of $45.00 for Plaintiff's annual membership fee. (*Id.*). Due to what Plaintiff describes as his "simple mismanagement," Plaintiff failed to pay any of the $45.00 balance at the time it came due on June 19, 2012. (*Id.*). As a result, on Plaintiff's next account statement, for the period ending June 22, 2012, there was a balance of $45.51, which consisted of the $45.00 annual membership fee and a $0.51 interest charge. (*Id.* at ¶ 3). Plaintiff paid $47.00 to satisfy the June 2012 Credit Card Account statement. (*Id.* at ¶ 4). Plaintiff alleges that he intentionally overpaid the June 2012 Credit Card Account statement "[i]n an effort to stop Chase's interest charges." (*Id.*).

On July 30, 2012, Plaintiff paid $48.00 to settle his Credit Card Account statement for the period ending July 22, 2012. (Compl. ¶ 20). This payment resulted in a positive credit balance of $0.67 on Plaintiff's Credit Card Account because Plaintiff once again overpaid "in an effort to stop or reduce any

4

possible interest charges in the future," as he attests.  (*Id.*; Epstein Decl. ¶ 5).
According to Plaintiff, his next Credit Card Account statement reflected the
positive credit balance of $0.67 and included an "Account Message" that read:
"You have a credit balance so no payment is required.  You may make charges
against the credit or request a refund by contacting Cardmember Services at
the address above.  If after 6 months the credit balance is $1.00 or more, we
will refund the credit within 30 days." (Compl. ¶ 21).  Plaintiff did not use his
Credit Card Account for the subsequent five months, and the $0.67 positive
credit balance remained in his account during that time.  (*Id.* at ¶ 22).

        Thereafter, Plaintiff received a statement for his Credit Card Account
showing that on January 7, 2013, a charge of $0.67, identified as an "interest"
charge, had been assessed against Plaintiff's Credit Card Account.  (Compl.
¶ 23).  According to Plaintiff, the Credit Card Account statement listed the
charge as "Purchase Interest Chrg Debit ADJ." (*Id.*).  As a result of this charge,
Plaintiff's Credit Card Account balance went from a positive balance of $0.67 to
$0.00.  Plaintiff claims that CBUSA "had no right to take [his] money[,]" and by
doing so breached the Cardmember Agreement.  (*Id.* at ¶ 4).

        On May 1, 2013, Plaintiff's Credit Card Account was charged the annual
membership fee of $45.00.  (Compl. ¶ 27).  Because the $0.67 had been
removed from Plaintiff's Credit Card Account, as discussed in the next section,
it was not applied against the annual membership fee.  (*Id.*).

**C.      The Parties' Efforts to Resolve the Dispute**

Prior to bringing this action, Plaintiff attempted to resolve his claims against Defendants informally.  (Epstein Decl. ¶ 8).  However, as discussed below, resolving the claims to Plaintiff's satisfaction would entail significant undertakings by Chase that seemingly transcend Chase's obligations under the Cardmember Agreement.  On or about January 14, 2013 — the day after Plaintiff received his Credit Card Account statement that showed the "interest" charge — he contacted one of CBUSA's customer service representatives to advise it of the erroneous charge.  (*Id.*).

Plaintiff continued to discuss the disputed charge with CBUSA until March 4, 2013.  (Epstein Decl. ¶ 9).  Specifically, on February 1, 2013, Plaintiff sent a fax to CBUSA's counsel informing the attorney that he intended to bring a class action lawsuit, file a complaint with the Consumer Financial Protection Bureau ("CFPB"), and/or engage in "media exposure" if the dispute was not resolved to his satisfaction.  (*Id.* at ¶ 10, Ex. D).  Proceeding from the premise that CBUSA "did not have an obligation to return [his] $0.67!," Plaintiff reasoned that it therefore "had no right to take [the $0.67] away so it was unavailable for later transactions while the account was still alive."  (*Id.* at Ex. D).

On February 11, 2013, Plaintiff sent a letter to a different representative for CBUSA, in response to a letter from CBUSA.  (Epstein Decl., Ex. E).[3]  In this correspondence, Plaintiff provided a more detailed recitation of his grievance

---

[3]      The parties did not provide CBUSA's correspondence to Plaintiff.  Its absence from the record, however, does not impact the Court's resolution of the pending motions.

related to the purported "interest" charge.  (*Id.*).  Plaintiff indicated that his "major requirement [to resolving the dispute] will be that [CBUSA] change its illegal and immoral procedures and provide accurate language about credit balances on its statements."  (*Id.*).  He informed CBUSA that none of the three options identified in his prior fax (*viz.*, lawsuit, CFPB complaint, or media exposure) needed to occur if Defendants "contact[ed] [Plaintiff] in the next few days before [he] execute[d] a Retainer Agreement" with attorneys to bring a class action.  (*Id.*).  Plaintiff further warned CBUSA that its "window" for resolving the dispute with Plaintiff without him filing a class action was "quite short."  (*Id.*).

On or around March 4, 2013, approximately seven weeks after Plaintiff first notified CBUSA that he disputed the "interest" charge, Plaintiff received a cashier's check for $0.67 from JPMC dated February 21, 2013, as reimbursement for the disputed charge (the "Refund Check").  (Del Vecchio Decl., Ex. A; *see* Epstein Decl. ¶ 13).  Plaintiff has not cashed, nor does he intend to cash, the Refund Check.  (Epstein Decl. ¶ 13).

## D.     The Instant Litigation

On July 9, 2013, approximately four months after receiving the Refund Check, Plaintiff filed a class action complaint against Defendants (the "Complaint").  (Dkt. #1).  Plaintiff "seeks to represent a class defined as all Chase credit card account holders in the United States who were charged monies associated with a positive credit balance on their Chase card account (the 'Class')," and a subclass "of all Class members who were charged monies

associated with a positive credit balance on their Chase credit card account residing in California (the 'Subclass')." (Compl. ¶¶ 30-31). Plaintiff's overarching allegation is that Defendants breached the Cardmember Agreement by "charging their credit card holders 'interest' on their positive credit balances." (*Id.* at ¶ 1). Related to this, Plaintiff brings claims for (i) breach of contract; (ii) breach of the implied covenant of good faith and fair dealing; (iii) conversion; (iv) unjust enrichment; (v) negligent misrepresentation; (vi) fraud; and (vii) violations of state statutes, including the Delaware Consumer Fraud Act ("DCFA"), 6 Delaware Code §§ 2511-27, and the California Consumer Legal Remedies Act ("CLRA"), California Civil Code §§ 1750-84. (*Id.* at ¶¶ 37-99).

On August 21, 2013, Plaintiff filed a Motion for Appointment of Interim Class Counsel (the "Interim Class Counsel Motion"). (Dkt. #11). The Court held a pretrial conference on August 23, 2013, to discuss Defendants' anticipated motion to dismiss. In accordance with the briefing schedule set during that conference, Defendants filed their motion to dismiss on September 23, 2013 (Dkt. #17); Plaintiff filed an opposition to Defendants' motion on October 23, 2013 (Dkt. #22); and the motion was fully submitted when Defendants filed their reply on November 6, 2013 (Dkt. #25). At the August 23 pretrial conference, the Court stayed the briefing on the Interim Class Counsel Motion pending further order of the Court. (Dkt. #14). Because Plaintiff's Interim Class Counsel Motion would not be decided until resolution of Defendants' motion to dismiss, on December 13, 2013, the Court ordered

Plaintiff to withdraw its Interim Class Counsel Motion, providing leave to re-file said motion as appropriate upon resolution of Defendants' motion to dismiss. (Dkt. #28).

## DISCUSSION

### A. Applicable Law

#### 1. Motions to Dismiss Under Rule 12(b)(1)

"It is a fundamental precept that federal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress." *Durant, Nichols, Houston, Hodgson, & Cortese-Costa, P.C.* v. *Dupont*, 565 F.3d 56, 62 (2d Cir. 2009) (internal quotation marks omitted). In that regard, "a district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it lacks the statutory or constitutional power to adjudicate it." *Aurecchione* v. *Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (internal quotation marks omitted); *accord Solowski* v. *Metro. Transp. Auth.*, 723 F.3d 187, 190 (2d Cir. 2013).

The "plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova* v. *United States*, 201 F.3d 110, 113 (2d Cir. 2000). In resolving a Rule 12(b)(1) motion to dismiss, "[t]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of [the] plaintiff, but jurisdiction must be shown affirmatively, and that showing [may] not [be] made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison* v. *Nat'l*

*Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal citation and quotation marks omitted).  Moreover, "[w]here subject matter jurisdiction is contested, courts are permitted to look to materials outside the pleadings, including affidavits."  *DeBoe* v. *Du Bois*, 503 F. App'x 85, 86 (2d Cir. 2012) (summary order).

### 2.    Motions to Dismiss Under Rule 12(b)(6)

The standard of review for a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted is "substantively identical" to the Rule 12(b)(1) standard.  *Lerner* v. *Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003); *see also Sheri Torah, Inc.* v. *Vill. of S. Blooming Grove*, No. 10 Civ. 3762 (LAP), 2013 WL 1454953, at *5 (S.D.N.Y. Mar. 28, 2013) ("The standard for a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is substantively identical to that governing Rule 12(b)(6)." (internal quotation marks omitted)).  Under Rule 12(b)(6), the Court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  *Faber* v. *Metro. Life*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (internal quotation marks omitted)).  The Court is not, however, bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions."  *Rolon* v. *Hennenman*, 517 F.3d 140,

149 (2d Cir. 2008); *see also Harris* v. *Mills*, 572 F.3d 66, 72 (2d Cir. 2009)
("[A]lthough a court must accept as true all of the allegations contained in a
complaint, that tenet is inapplicable to legal conclusions, and threadbare
recitals of the elements of a cause of action, supported by mere conclusory
statements, do not suffice." (internal quotation marks omitted) (quoting *Iqbal*,
556 U.S. at 678)).

**B.    Analysis**

The Court begins with Defendants' Rule 12(b)(1) motion because
resolution of that motion is dispositive of the issues here.  Defendants contend
that Plaintiff lacks standing to bring this action because he received a "full
refund before the lawsuit was filed."  (Def. Br. 4).  Plaintiff does not dispute
that approximately four months before he filed the lawsuit, he received a
refund from Defendants.  (Epstein Decl. ¶ 13).  Nonetheless, Plaintiff argues
that he has standing to maintain this action because (i) Defendants' Refund
Check (which, Plaintiff repeatedly notes, he has declined to cash) amounts to
an improper attempt to "pick off" Plaintiff as class representative, and
(ii) Plaintiff has standing, in both individual and class representative capacities,
to pursue his claims for injunctive relief.  (*See, e.g.*, Pl. Opp. 1, 5, 10-11).

As set forth in the remainder of this section, Plaintiff's arguments are
erroneous in at least three respects: First, Plaintiff fails to demonstrate any
actual injury, or any future injury that is "certainly impending."  Second,
Plaintiff erroneously relies on the doctrine of mootness, when only the standing
doctrine is implicated by the facts of this case.  Third, Plaintiff improperly

seeks to use the vehicle of a class action lawsuit to obtain standing he plainly lacks as an individual litigant.

> **1.    The Court Lacks Subject Matter Jurisdiction to Adjudicate Plaintiff's Claims**

>> **a.    Plaintiff Lacks Standing to Bring Claims for Damages in an Individual Capacity**

"Article III, § 2, of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies,' which restrict the authority of federal courts to resolving the legal rights of litigants in actual controversies."  *Genesis Healthcare Corp.* v. *Symczyk*, 133 S. Ct. 1523, 1528 (2013); *see also Valley Forge Christian Coll.* v. *Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982) ("The requirements of Art. III are not satisfied merely because a party requests a court of the United States to declare its legal rights, and has couched that request for forms of relief historically associated with courts of law in terms that have a familiar ring to those trained in the legal process.").

"As an incident to the elaboration of this bedrock requirement," a plaintiff seeking to maintain an action in federal court is "always required" to have standing.  *Valley Forge Christian College*, 454 U.S. at 471; *Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ("One of those landmarks, setting apart the 'Cases' and 'Controversies' that are the justiciable sort referred to in Article III — serving to identify those disputes which are appropriately resolved through the judicial process — is the doctrine of standing." (internal citation and quotation marks omitted)).  To that end, the

issue of standing is "the threshold question in every federal case, determining the power of the court to entertain the suit." *Kiryas Joel Alliance* v. *Vill. of Kiryas Joel*, 495 F. App'x 183, 188 (2d Cir. 2012) (summary order).

As the Supreme Court established in *Lujan*, "the irreducible constitutional minimum of standing contains three elements":

> First, the plaintiff must have suffered an injury in fact — an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of — the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

504 U.S. at 560 (internal citations and quotation marks omitted).  The "[s]tanding doctrine functions to ensure, among other things, that the scarce resources of the federal courts are devoted to those disputes in which the parties have a concrete stake." *Friends of the Earth, Inc.* v. *Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 192 (2000); *see also Genesis Healthcare Corp.*, 133 S. Ct. at 1528 ("This requirement ensures that the Federal Judiciary confines itself to its constitutionally limited role of adjudicating actual and concrete disputes, the resolutions of which have direct consequences on the parties involved.").  In accordance with this precept, a plaintiff must establish standing for each claim and form of relief sought. *Carver* v. *City of New York*, 621 F.3d 221, 225 (2d Cir. 2010).  In addition,

standing "'must exist at the commencement of litigation.'" *Davis* v. *Fed. Election Comm'n*, 554 U.S. 724, 732 (2008) (citation omitted).[4]

Focusing on the first requirement — injury in fact — a "particular injury" requires "that the injury must affect the plaintiff in a personal and individual way." *Arizona Christian Sch. Tuition Org.* v. *Winn*, 131 S. Ct. 1436, 1442 (2011). Plaintiff here has failed to establish by a preponderance of the evidence that he has suffered "an injury in fact" so as to vest this Court with subject matter jurisdiction over his claims.[5] Each of Plaintiff's claims is predicated on Defendants' purported breach of the Cardmember Agreement by charging Plaintiff "interest" on his positive credit card account balance. (Compl. ¶ 1). All damages alleged in the Complaint flow from this breach. Defendants have,

---

[4]    Courts have frequently, if sometimes imprecisely, distinguished standing from mootness by suggesting that standing considers the status of the plaintiff at the time the litigation is commenced, while mootness considers whether the status of the plaintiff has changed over the course of the litigation. *See, e.g., Amador* v. *Andrews*, 655 F.3d 89, 99-100 (2d Cir. 2011) ("The standing requirement winnows out disputes that would be inappropriate for judicial resolution for lack of three constitutionally required elements: (i) an injury in fact (ii) that is fairly traceable to the defendant and (iii) that is likely to be redressed by a favorable decision. Similarly, the mootness doctrine ensures that the occasion for judicial resolution established by standing persists throughout the life of a lawsuit." (internal citations omitted)); *Etuk* v. *Slattery*, 936 F.2d 1433, 1441 (2d Cir. 1991) ("While standing focuses on the status of the parties when an action is commenced, the mootness doctrine requires that the plaintiffs' claims remain alive throughout the course of the proceedings." (citing 13A Charles A. Wright, *et al.*, FEDERAL PRACTICE & PROCEDURE § 3533, at 211 (2d ed. 1984)); *cf. Friends of the Earth, Inc.*, 528 U.S. at 180 ("The Constitution's case-or-controversy limitation on federal judicial authority, Art. III, § 2, underpins both our standing and our mootness jurisprudence, but the two inquiries differ in respects critical to the proper resolution of this case, so we address them separately."); *but cf. id.* at 189-90 (concluding that the Fourth Circuit had confused mootness with standing: "The confusion is understandable, given this Court's repeated statements that the doctrine of mootness can be described as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).' * * * Careful reflection on the long-recognized exceptions to mootness, however, reveals that the description of mootness as 'standing set in a time frame' is not comprehensive." (internal citations omitted)).

[5]    Because Plaintiff cannot satisfy the first element of Article III standing, the Court need not assess the remaining two requirements.

however, provided Plaintiff with a cashier's check that reimburses Plaintiff for all economic damage he incurred as a result of the alleged breach, a fact that Plaintiff does not dispute.  (Epstein Decl. ¶ 13).  That Plaintiff received the Refund Check demonstrates the absence of any "actual" injury on which Plaintiff's standing could be established.  *See Air Espana* v. *Brien*, 165 F.3d 148, 153 (2d Cir. 1999) (upholding dismissal of claims related to canceled fines imposed by the defendant); *Hunter* v. *C.I.R.*, No. 09 Civ. 4268 (JSR) (GWG), 2010 WL 2605715, *4 (S.D.N.Y. June 29, 2010) (report and recommendation) (dismissing plaintiff's claim for lack of subject matter jurisdiction where plaintiff had received the refund for which he filed suit); *White* v. *First Am. Registry*, 230 F.R.D. 365, 368-69 (S.D.N.Y. 2005) (holding, in context of class certification motion, that plaintiff did not have standing where defendant had remedied the alleged wrongful conduct prior to plaintiff filing suit).[6]  The Court

---

[6]  Plaintiff's claims for any attorney's fees and costs he has incurred in bringing this claim do not establish an injury sufficient for standing purposes.  *Lewis* v. *Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990) ("This interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim."); *W.R. Huff Asset Mgmt. Co., LLC* v. *Deloitte & Touche LLP*, 549 F.3d 100, 109 (2d Cir. 2008) ("On the face of the complaint, [the plaintiff's] only interest in this litigation as an attorney-in-fact is the recovery of its legal fees, which are a byproduct of the suit itself and cannot serve as a basis for Article III standing." (internal quotation marks omitted).  Plaintiff concedes as much by not opposing Defendants' arguments on this point.

Theoretically, Plaintiff could seek to premise standing on a damages theory that he was deprived of the opportunity to use and/or earn interest on the $0.67 for the seven-week period that it was ostensibly "converted" by Defendants.  Plaintiff does not make this claim in his papers and the Court will not make arguments for him.  In any event, such a claim would at most demonstrate that Plaintiff was inconvenienced, and any alleged injury would rest on pure speculation.  Allegations of that sort would be far too slender a reed on which to premise Article III standing.  *See Ingraham* v. *Wright*, 430 U.S. 651, 674 (1977) ("There is, of course, a de minimis level of imposition with which the Constitution is not concerned."); *New Creation Fellowship of Buffalo* v. *Town of Cheektowaga*, 164 F. App'x 5, 7 (2d Cir. 2005) (holding that a party did not have standing where it experienced only "minor inconveniences") (summary order); *cf. Hecht* v. *Commerce Clearing House, Inc.*, 897 F.2d 21, 24 ("[I]njury in the form of lost business

cannot accept Plaintiff's contention that by neither requesting nor cashing the Refund Check, he has somehow created standing.  To do so would not only render hollow the injury-in-fact requirement, but would also engender a disincentive among potential litigants to attempt legitimately to resolve disputes without judicial intervention.

### b.   Plaintiff Lacks Standing to Bring Claims for Injunctive Relief in an Individual Capacity

Nor does Plaintiff's claim for injunctive relief create an imminent injury sufficient to establish the requisite standing.  "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes."  *Clapper* v. *Amnesty Intern. USA*, 133 S. Ct. 1138, 1147 (2013).  The Supreme Court has "repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that 'allegations of *possible* future injury' are not sufficient."  *Id.* (emphasis in original).

Plaintiff argues that based on his allegation that Defendants' "wrongful conduct is of a continuing nature," he faces an imminent injury because he continues to maintain his Credit Card Account.  (Pl. Opp. 10-11).  These allegations alone do not present a "certainly impending" injury sufficient to confer standing.  *See Marcavage* v. *City of New York*, 689 F.3d 98, 103 (2d Cir. 2012) ("In establishing a certainly impending future injury, a plaintiff cannot

commissions ... is too speculative to confer standing, because [the plaintiff] only alleges that he would have lost commissions in the future, and not that he has lost any yet."); *Moore* v. *Guesno*, 301 F. App'x 17, 18 (2d Cir. 2008) (dismissing claim for lack of standing because the party's "anticipated ... interest in the expected proceeds of [a] contract [were] too speculative to support ... standing") (summary order).

rely solely on past injuries; rather, the plaintiff must establish how he or she will be injured prospectively and that the injury would be prevented by the equitable relief sought." (collecting cases)). To the contrary, the record before the Court demonstrates a negligible possibility of any future injury to Plaintiff, and certainly nothing that would be cognizable for standing purposes. Plaintiff opened his Credit Card Account in May 2009. (Compl. ¶ 19). According to Plaintiff, in the ensuing five years, Defendants have only once applied an allegedly wrongful "interest" charge to his account. (*See id.* at ¶¶ 19-23; Epstein Decl. ¶ 8). Upon prompt (and contractually specified) notification that Plaintiff disputed the interest charge, Defendants refunded Plaintiff the entire amount within approximately seven weeks — notably, less time than was required under the Cardmember Agreement. (Cardmember Agreement at 4 (providing that Defendants must correct any credit card account statement error within 90 days after receiving a customer's written notification, or explain to the customer why Defendants believe the statement to be correct)). Nothing in the record suggests that Defendants will levy a similar charge against Plaintiff's Credit Card Account in the future, or that this "policy" was anything other than an administrative hiccup. Finally, the Cardmember Agreement provides a mechanism by which Plaintiff may recoup any questionable charges — a process the Court does not doubt, considering its effectiveness in making Plaintiff whole in this very instance.

### c.   Plaintiff Lacks Standing to Bring Claims for Damages or Injunctive Relief in a Representative Capacity

Plaintiff does not argue that the "irreducible constitutional minimum" elements of standing, *Lujan*, 504 U.S. at 560, are met here.  Instead, Plaintiff attempts to bypass the Article III standing requirements by bringing a class action.  Such a result is not tenable.  *See, e.g., Allee* v. *Medrano*, 416 U.S. 802, 829 (1974) (Burger, C.J., concurring in part and dissenting in part) ("Standing cannot be acquired through the back door of a class action.").  Courts have made clear that "the standing requirement cannot be dispensed with by styling a complaint as a class action." *Policemen's Annuity and Benefit Fund of City of Chicago* v. *Bank of Am., NA*, 907 F. Supp. 2d 536, 545 (S.D.N.Y. 2012); *see also Lewis* v. *Casey*, 518 U.S. 343, 357 (1996) ("That a suit may be a class action adds nothing to the question of standing."); *Simon* v. *E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) (same).

"The Supreme Court has held that 'if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendant, none may seek relief on behalf of himself or any other member of the class.'" *Cent. States Southeast and Southwest Areas Health and Welfare Fund* v. *Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 199 (2d Cir. 2005) (quoting *O'Shea* v. *Littleton*, 414 U.S. 488, 494 (1974)).  To that end, the "plaintiff [still] must allege 'a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants.'" *Southside Fair Hous. Comm.* v. *City of New York*, 928 F.2d 1336, 1341 (2d Cir. 1991) (quoting *Warth* v. *Seldin*, 422 U.S. 490, 501 (1975)); *see*

18

also *NECA-IBEW Health & Welfare Fund* v. *Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012) ("[I]n a putative class action, a plaintiff has class standing if he plausibly alleges [i] that he personally has suffered some actual injury as a result of the putatively illegal conduct of the defendant, and [ii] that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants." (internal citation and quotation marks omitted)).

If Plaintiff cannot establish standing, he cannot "seek relief on behalf of himself or any other member of the class.'" *W.R. Huff Asset Mgmt. Co., LLC*, 549 F.3d at 106 n.5 (quoting *Warth*, 422 U.S. at 502); *see also Lewis*, 518 U.S. at 357 ("[E]ven named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" (quoting *Simon*, 426 U.S. at 40 n.20 (1976))).  For the reasons stated in the preceding two sections, Plaintiff cannot meet that burden here.

In attempting to demonstrate his fitness to serve as putative class representative, Plaintiff has confused standing with mootness.  That is, in responding to Defendants' claim that their refund of his $0.67 positive balance vitiates his standing under Article III, Plaintiff relies on cases holding that a putative class representative's claims are not mooted by an offer of judgment made prior to class certification.  (*See* Pl. Opp. 5-13).[7]  The Court agrees with

---

[7]        Federal Rule of Civil Procedure 68 provides, in relevant part:

Plaintiff that these cases were not affected by the Supreme Court's recent decision in *Genesis Healthcare*, which concerned a collective action under the Fair Labor Standards Act, rather than a class action under Federal Rule of Civil Procedure 23.  Significantly, however, the Court disagrees with Plaintiff that these cases are relevant to the standing analysis here.  These cases "concern[ed...] a class action defendant's ability to 'pick-off' named plaintiffs by mooting their private individual claims" through Rule 68.  *Nasca* v. *GC Services Ltd. P'ship*, No. 01 Civ. 10127 (DLC), 2002 WL 31040647, at *2 (S.D.N.Y. Sept. 12, 2002).  By comparison, there are no viable "private individual claims" to moot here.

Notably, with the exception of the *Kagan* case (discussed in the next paragraph), the cases on which Plaintiff relies involve instances in which a plaintiff who indisputably had standing at the time the lawsuit was filed, was subsequently "picked off" before resolution of a class certification motion.  The resulting inquiry is one of mootness, with courts focused on balancing concerns for the potential devaluation of the class action mechanism with the need to respect the limits of their jurisdiction.  *See generally Deposit Guarantee Nat'l Bank* v. *Roper*, 445 U.S. 326, 339 (1980) ("Requiring multiple plaintiffs to bring separate actions, which effectively could be 'picked off' by a defendant's

---

At least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued. If, within 14 days after being served, the opposing party serves written notice accepting the offer, either party may then file the offer and notice of acceptance, plus proof of service.  The clerk must then enter judgment.

Fed. R. Civ. P. 68(a).

tender of judgment before an affirmative ruling on class certification could be obtained, obviously would frustrate the objectives of class actions; moreover it would invite waste of judicial resources by stimulating successive suits brought by others claiming aggrievement.").  Such an inquiry is not implicated where, as here, the plaintiff lacks standing to bring the action in the first instance.

As noted, Plaintiff relies extensively on *Kagan* v. *Gibraltar Sav. & Loan Ass'n*, 35 Cal. 3d 582 (Cal. 1984), in support of his position that he has standing to prosecute his claims.  (Pl. Opp. 6-8).  This reliance is misplaced. The California Supreme Court's decision in *Kagan* was predicated exclusively on its interpretation of the CLRA, under which "a prospective defendant receiving notice of a grievance which affects a class of consumers can avert a subsequent class action only by remedying the contested practices as to all affected consumers."  *Id.* at 591.  Because the defendant in *Kagan* had not complied with the CLRA requirements, the court held that the plaintiff could still maintain her class action, despite the fact that the defendant had provided the plaintiff with the individual relief sought prior to the plaintiff commencing suit.  *Id.* at 595; *see also id.* at 593 ("Accordingly, we interpret broadly the requirement of section 1780 [the standing provision of the CLRA] that a consumer 'suffer [ ] any damage' to include the infringement of any legal right as defined by section 1770.").  In a subsequent decision of the California Supreme Court, however, the Court disapproved of the *Kagan* Court's broad construction of the standing provision, and "decline[d] to extend *Kagan* to situations in which an allegedly unlawful practice under the CLRA has not

resulted in some kind of tangible increased cost or burden to the consumer."
*Meyer* v. *Sprint Spectrum L.P.*, 45 Cal.4th 634, 643 (2009); *see also In re Vioxx
Class Cases*, 180 Cal.App.4th 116, 129 (2009) (standing under CLRA requires
showing "not only that a defendant's conduct was deceptive but that the
deception caused [plaintiffs] harm").[8]

More fundamentally, Plaintiff cannot rely on California law to expand
Article III standing.[9]  "Where, as here, jurisdiction is predicated on diversity of
citizenship, a plaintiff must have standing under both Article III of the
Constitution and applicable state law in order to maintain a cause of action."
*Mid-Hudson Catskill Rural Migrant Ministry, Inc.* v. *Fine Host Corp.*, 418 F.3d
168, 173 (2d Cir. 2005) (collecting cases); *see also Lee* v. *Am. Nat'l Ins. Co.*, 260
F.3d 997, 1001-02 (9th Cir. 2001) (holding that an uninjured plaintiff who may
have had a state cause of action under California's Unfair Competition Law was
"foreclosed from litigating the same cause of action in federal court, [because]
he cannot demonstrate the requisite injury" (collecting cases)).  Plaintiff may
not use a California statute to expand the scope of standing afforded under
Article III.

---

[8]  To be sure, the *Meyer* Court noted that "any damage" was a broader category than
"actual damages," and could include such things as "certain types of transaction costs
and opportunity costs."  45 Cal.4th at 640-41.  Notably, however, Plaintiff does not
allege either type of damage in the Complaint.

[9]  "In assessing standing, California courts are not bound by the 'case or controversy'
requirement of article III of the United States Constitution, but instead are guided by
'prudential' considerations."  *Bilafer* v. *Bilafer*, 161 Cal.App.4th 363, 370 (2008).  In
order to have standing in California courts, broadly speaking, the plaintiff must be able
to allege an "invasion of the plaintiff's legally protected rights."  *Angelucci* v. *Century
Supper Club*, 41 Cal.4th 160, 175 (2007).  Moreover, "[s]tanding rules for actions based
upon statute may vary according to the intent of the Legislature and the purpose of the
enactment."  *Id.*

In the alternative, Plaintiff argues that he has standing to pursue claims of injunctive relief for himself and the putative class because he remains a credit card account holder, and the harm suffered by him, which he identifies as "the taking of his 67-cent credit balance, in violation of Chase's Cardmember Agreement," is "certainly a harm that will be repeatedly suffered by Plaintiff Epstein and by the class." (Pl. Opp. 11). Plaintiff argues that such claims are "inherently transitory," in that "identical claims are certain to repeat for the class, either because the individual could suffer repeated harm, or because it is certain that others similarly situated will be harmed by the same wrongful conduct." (Pl. Opp. 11 (citation omitted)). However, even were the Court to recognize the alleged conduct by Chase as "inherently transitory," and there are reasons not to do so,[10] such a concept is a subset of the exception to the doctrine of mootness for cases that are "capable of repetition yet evading review." This mootness exception cannot, of course, accord Plaintiff standing. *See Friends of the Earth, Inc.*, 528 U.S. at 191 ("Standing admits of no similar

---

[10]  As the Supreme Court noted in *Genesis Healthcare*, albeit as to a different statutory scheme:

> The "inherently transitory" rationale was developed to address circumstances in which the challenged conduct was effectively unreviewable, because no plaintiff possessed a personal stake in the suit long enough for litigation to run its course. A plaintiff might seek, for instance, to bring a class action challenging the constitutionality of temporary pretrial detentions. In doing so, the named plaintiff would face the considerable challenge of preserving his individual claim from mootness, since pretrial custody likely would end prior to the resolution of his claim. To address this problem, the Court explained that in cases where the transitory nature of the conduct giving rise to the suit would effectively insulate defendants' conduct from review, certification could potentially "relate back" to the filing of the complaint. But this doctrine has invariably focused on the fleeting nature of the challenged conduct giving rise to the claim, not on the defendant's litigation strategy.

133 S. Ct. at 1531 (internal citations omitted).

23

exception; if a plaintiff lacks standing at the time the action commences, the fact that the dispute is capable of repetition yet evading review will not entitle the complainant to a federal judicial forum."); *Dodge* v. *Cnty. of Orange*, 103 F. App'x 688, 689-90 (2d Cir. 2004) ("This argument confuses mootness and standing, because the exception to mootness for disputes capable of repetition yet evading review does not apply equally to standing.") (summary order).

Plaintiff alleges that he has "offered concrete evidence of the risk of future injury to himself and ongoing injury to the class." (Pl. Opp. 13). Yet, as just determined, Plaintiff has failed to present any actual or imminent injury to himself, and any injury to the purported class is insufficient by itself to create the necessary case or controversy that would vest jurisdiction in this Court. *See Dodge*, 103 F. App'x at 690 ("[T]he named plaintiffs in this action must themselves have standing to seek injunctive relief."). Because Plaintiff has not demonstrated that he has standing, this Court does not have subject matter jurisdiction over this case, and it must be dismissed.

### 2.    Defendants' Rule 12(b)(6) Motion Is Denied as Moot

Defendants also move under Rule 12(b)(6), arguing that Plaintiff has failed to state a claim upon which relief can be granted. (Def. Br. 10). Plaintiff vigorously opposes Defendants' arguments for each of his claims. (Pl. Opp. 13-28). Because the Court has determined that it lacks subject matter jurisdiction over this action, it need not address Defendants' Rule 12(b)(6) motion. As the Second Circuit has stated:

> Without a plaintiff's satisfaction and demonstration of the requirements of Article III standing, a federal court has no subject

> matter jurisdiction to hear the merits of a plaintiff's — or, in this case, the class plaintiffs' — claim: "Without jurisdiction a court cannot proceed at all in any cause.  Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the case."

*Cent. States Southeast and Southwest Areas Heath and Welfare Fund*, 433 F.3d at 198 (quoting *Steel Co.* v. *Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)).

Accordingly, Defendants' Rule 12(b)(6) motion is denied as moot.

### 3.    Plaintiff's Request for Leave to Amend the Complaint Is Denied

Plaintiff requests that if the Court finds that any of his claims should be dismissed, he be granted leave to amend the Complaint.  (Pl. Opp. 30).  The Court construes Plaintiff's request to be limited to dismissal under Rule 12(b)(6), and not on subject matter jurisdiction grounds as the Court has held. Even assuming Plaintiff intends to maintain his request in light of the disposition reached, Plaintiff has failed to provide any additional facts on which standing could be predicated.  Accordingly, an amended complaint would not cure Plaintiff's jurisdictional defect, and thus would be futile.  For this reason, Plaintiff's request for leave to amend the Complaint is denied.  *Manson* v. *Stacescu*, 11 F.3d 1127, 1133 (2d Cir. 1993) (holding that the district court did not abuse its discretion in denying the plaintiffs' motion for leave to amend their complaint because the plaintiffs did not have standing to sue even under the additional facts related to standing that the plaintiffs pleaded in their proposed amended complaint); *Brown* v. *Deloitte & Touche LLP*, No. 98 Civ. 6054 (JSM), 1999 WL 269901, at *3 (S.D.N.Y. May 4, 1999) ("Because an

amended pleading cannot remedy this jurisdictional defect, such a pleading would be futile and the Court therefore denies leave to amend the complaint.").

## CONCLUSION

For the foregoing reasons, Defendants' Rule 12(b)(1) motion to dismiss is granted, Defendants' Rule 12(b)(6) motion to dismiss is denied as moot, and the Complaint is dismissed.

The Clerk of Court is directed to terminate Docket Entry No. 17 and mark the case closed.

SO ORDERED.

Dated:      March 21, 2014
            New York, New York

                                          _____
                                          KATHERINE POLK FAILLA
                                          United States District Judge

26